OEHLER, *et al. v* WALKER, *et al.*—June, 1828.

C and his wife, made a gift of a sum of money to J, their eldest son, which was deposited with W, who undertook the trust of purchasing a tract of land therewith for J's use. In 1792, he purchased the land and took a conveyance to himself. J died without issue, under age, and his rights devolved on his brothers and sisters, the eldest of whom attained the age of 21 in 1805, and died during that year. In November 1815, the heirs of J, the *cestui que trust* in fee, filed their bill against the heirs of W, for a conveyance of the land in conformity with his undertaking—*Held*, (the trust having been fully established,) that the lapse of time, between the time of purchase and filing the bill, formed no bar to the proceedings.

The cause, however, having been 12 years in the court, from its commencement to the final decree, and many of the parties on each side of the docket, having died during that period, the court, under the circumstances, determined to say nothing of the rents and profits received, or the improvements made by the trustee, (who was in possession for a part of the time,) or his representatives; but only to decree a conveyance in fee.

The county court, as a court of equity, having expressed an opinion upon the law and facts in the cause, in favour of the complainants' right; and as they were to be relieved, the only subject was, the extent of such relief. But as in the then stage of the cause, full justice could not be done, in order, therefore, that a final decision should be made—*Ordered*, that the auditor state an account between the parties, &c. Such account was stated by the auditor. After which that court overruled the opinion before expressed upon the law and facts, and dismissed the bill. On appeal, the appellate court examined the whole case, and decided that the decree dismissing the bill be reversed.

APPEAL from *Saint-Mary's* County Court, sitting as a court of equity. On the 8th of November 1815, *Nicholas Carberry* and *Rose Ann Carberry*, filed their bill of complaint against *Mary Millard, Jeremiah Booth*, and *Ann* his wife, *James Walker, Harriet Walker, Joseph Walker, Ann Walker*, and *Milly Walker*, heirs at law of *Bennet Walker*, deceased; and under the leave of the court they filed their supplemental bill in the names of *Nicholas Carberry, Andrew Oehler*, and *Rose Ann* his wife, late *Rose Ann Carberry*, against the above named defendants. The supplemental bill stated, that in the

year 1792, a tract of land called *Yielding Berry*, then the property of *Francis Thompson*, was sold to satisfy an execution levied thereon, when *Patrick Carberry*, the father of the complainants, and *Ann* his wife, their mother, and sister of the said *Thompson*, who was then absent out of the state, being anxious to save the said land, so that it should not go out of the family of the said *Thompson*, entered into an agreement with *Bennet Walker*, that he should, at the sale of the land, become the purchaser, as trustee in fee for the use of *James Carberry*, who was then the eldest son and heir of the said *Patrick*, and *Ann* his wife, and brother of the whole blood to the complainants; and for that purpose the said *Patrick*, and *Ann* his wife, put into the hands of the said *Bennet Walker* the sum of £30, as also one hogshead of tobacco, to enable the said *B. Walker* to purchase the said land—he the said *B. Walker*, at the same time promising and agreeing with the said *Patrick*, and *Ann* his wife, to stand seized of the said land for the use of the said *James Carberry* in fee; and when he should obtain a conveyance of the land from the sheriff of the county, that immediately thereafter he would convey the land to the said *James Carberry*, agreeably to the purport of the said agreement. But that the said *B. Walker*, although he did purchase the said land at the said sale, and pay for the same with the money and tobacco, or part thereof, (the land having sold for only £30, being much below its real value, on account of the said agreement—the persons attending the sale knowing of the agreement, and being unwilling to buy the land out of the family,) which he received from the said *Patrick*, and *Ann* his wife, for the purpose aforesaid, and obtained a deed from the sheriff for the said land; yet fraudulently intending and contriving to wrong and injure the said *James Carberry*, and violate his said trust, (the said *Patrick* having died shortly after the said sale, and before the execution of the deed aforesaid;) refused to make a conveyance of the said land, agreeably to his promise; but on the contrary, some years after the death of the said *Patrick*, and when the said *Ann*, his widow, had married with *Arthur Thompson*, demanded that the said *Arthur* should pay rent for the time that the said widow had lived on the said land after the death of the said *Patrick*, claiming the said land to be the

property of him the said *B. Walker,* and *Joseph Walker,* brother of the said *B. Walker,* to whom the said land had been conveyed by the sheriff, jointly with the said *B. Walker.* And notwithstanding the said agreement the said *B. Walker,* (although the said *Joseph Walker* afterwards died, leaving by his will the said land to the said *B. Walker,)* never did, during his lifetime, nor have his heirs or representatives, or any of them since his death, ever conveyed the said land to *James Carberry,* during his lifetime, or to any of his heirs or representatives since his death. The complainants being the only surviving heirs and representatives of the said *James Carberry,* prayed by their said bill that the heirs of the said *B. Walker* be compelled to appear and answer, &c. also that they might be decreed to convey the said land agreeably to the promise and undertaking in trust of the said *B. Walker*—Also for general relief. The *answers* of the defendants (some of them being infants answered by their guardian,) stated that they were entirely ignorant of any of the transactions alleged in the complainants' bill to have taken place between the said *Patrick Carberry,* and *Ann* his wife, and *Bennet Walker,* nor had they, or either of them, ever heard the said *Walker* say any thing in relation thereto, nor had they any reason to believe that the said *Walker* did buy the lands mentioned in the said bill, in trust for any person therein mentioned; on the contrary they believed that the reverse was the truth, from the circumstance that the said *Walker* paid a full price for the lands—charged the said *Carberry's* widow a rent for the lands immediately after the purchase, and received payment for the same from *Arthur Thompson,* who intermarried with the said widow, a transaction utterly irreconcileable with the pretensions set up by the complainants. That the said *Walker* made very expensive improvements by erecting buildings on the said lands, resided thereon, and exercised uncontroled acts of ownership over the said lands till his death, which happened in the year 1809, without any claim being prosecuted on the part of those who now claim under the pretended trust. They believed that if any such trust was ever entered into, that it was subsequently abandoned, as they had heard and believed, that the said *Patrick Carberry* was much embarrassed, and was in the habit

of obtaining money from *Joseph* and *Bennet Walker*. That they could not find among the papers of the said *Bennet Walker* any papers whatever in relation to this pretended trust. They object and oppose to the complainants' bill, the great length of time which has elapsed since the purchase made by the said *Walker*, the payment of rent made to the said *Walker*, by those who claimed under the pretended trust, the omission to prosecute any claim, and the extensive and valuable improvements made thereon, &c. Commissions issued to take testimony, which was taken and returned, and the cause argued by the counsel of the parties.

The County Court, [*Johnson*, Ch. J.] at March term 1819, passed the following interlocutory decree: The object of the bill in this cause is to obtain from *Bennet Walker's* representatives a conveyance for a tract of land called *Yielding Berry*, which land, as alleged by the complainants, was in the year 1792, purchased at a sheriff's sale by *Bennet Walker*, at the instance and for the benefit of those under whom the complainants derive their title, with money furnished to him for that purpose. *It appears satisfactorily established by the evidence in the cause, that the land was purchased in trust;* and that, therefore, the trustee having failed to perform what in equity he was bound to have done, and the legal estate having devolved on the representatives in the cause, the complainants must be relieved, unless the grounds of defence are sustainable. The statute of frauds is no barrier to the recovery; and the length of time, either as applied to the act of limitations, or as a foundation to infer a transfer of the interest to the *cestui que trusts*, are no impediments to the recovery—the former, not applicable to cases of this description, and the delay is clearly accounted for, without inferring thereby a transfer of interest. From the evidence it is established, that the purchaser, the trustee, never took the possession, or claimed rent until after the death of the first person for whom a life-estate was reserved, nor until after the widow of *Patrick Carberry*, to whom also a life-estate was to have been secured, entered into a second marriage, which continued until the filing of this bill. The coverture, of course, must protect her interest from the statute of limitations, if otherwise it would have been

applicable to the cause; and the laches or delay of her husband in not pressing on her claim, can never impair it. As then a *feme covert*, under the trust, was entitled to a life-estate, and as her right continued until it was, by deed, transferred to the complainants in the cause, no well founded charge of neglect in delay is imputable to them. These remarks are equally applicable to the payment of rent by the second husband. No matter with what motive it was done, whether voluntarily, or from imperious necessity, it could not affect his wife's interest, or those entitled to the land after her decease. As then the complainants are to be relieved, the only subject is the extent of such relief. It appears that in this stage of the cause full justice cannot now be done, because the terms on which the conveyances to be made are not ascertained; in order, therefore, that a final decision shall be made—*Ordered*, that the auditor of this court state an account between the parties, in which he will state the rents received, while rents were paid, and the annual value of the land since the time it has been in the possession of *B. Walker*, and his heirs, and give credit for all improvements made that enhanced the value of the property, with interest on the rents, on the value and on the improvements. That he will state another account, containing the profits of the land from the date of the deed from *Arthur Thompson* and *wife*, to the complainants. The statements to be made from such evidence as is in the cause, or from what shall be laid before him; and that he will, in like manner, ascertain and report whether sufficient assets have come from *B. Walker* to the defendants in the cause. The accounts and report to be subject to the further order of the court.

The auditor, at August term 1819, made his report, charging the defendants with rents and annual value of the tract of land called *Yielding Berry*, for and from the year 1795 to the 26th of July 1815, inclusive, and with interest thereon, &c. amounting to the sum of $1291 21, and crediting them on the 1st of January 1805, with improvements made on the land, which enhanced its value, with interest thereon, to the 26th of July 1815, amounting to $3676 87½, leaving a balance due to the defendants of $2385 66½. He also reported, that from the certificate of the register of wills, it appeared that sufficient as-

sets had not come from *Bennet Walker* to the defendants in the cause, to satisfy the claims of creditors. The complainants excepted to the auditor's report; and the court, in March 1820, directed the auditor to report from the evidence an account charging the defendants with the rent, when rent was paid, and with the value annually of the property while possessed by the defendants, or those they claim under, as that value was increased by improvements, and give interest on the rents, the improved value, and on the improvements. To state another account charging the defendants with the rents and value as before directed, without paying any regard to the costs of the improvements, and by charging the complainants with the real value of the improvements, as they advanced the present value of the land. To state a third account, charging the defendants with the rents while received, and with the annual value when possessed as aforesaid, by adding the annual interest on the money expended in improvements to the rent or value of the land, and by giving credit for the improvements, charging interest on each; and state the assets as before directed.

At August term 1820, the auditor made a report, and exhibited five accounts. By account No. 1, he stated a balance due to the defendants of $2604 84½. By account No. 2, he stated a balance due to them of $1818 61. By account No. 3, he stated a balance due to the complainants of $2048 16. By account No. 4, he stated a balance due the defendants of $354 84½, and by account No. 5, he stated the balance due to the complainants of $698 16. The complainants excepted to the report, and all the statements made by the auditor. The court then passed an order that the auditor state such other accounts as he should be directed by the respective parties. At March term 1822, the auditor again reported; and by his statement the balance due the complainants on the 3d of August 1819, was $710 66. At August term 1822, the death of *Nicholas Carberry*, one of the complainants, and at August term 1824, the death of *Milly Walker,* one of the defendants, were suggested. At August term 1826, the complainants filed in court a deed dated the 26th of July 1815, from *Arthur Thompson,* and *Ann* his wife, to *Nicholas* and *Rose Ann Carberry,* children of the said *Ann,* by her former marriage, whereby, in consi-

deration of natural love and affection, the said *Thompson* and wife conveyed to the said *Nicholas* and *Rose Ann*, and their heirs, all that tract or parcel of land called *Yielding Berry.* The defendants objected to the auditor's last report, upon various grounds. The following agreement was entered into by the parties, viz. "That the defendants, and those under whom they claim, are the heirs at law of *Bennet Walker*, and his legal representatives; that he died in 1809, intestate, leaving a real estate of the value of $9000, which has been, under a commission of partition of the real estate of the said *Walker*, reported unsusceptible of division, and elected to be taken by *James Walker*, the eldest male heir, who gave bond and security in the usual form." The deaths of *Jeremiah Booth*, and *Ann* his wife, and *Mary Millard*, three other of the defendants, were suggested; and that *John Llewellin*, and *Mary* his wife, were the heirs at law of the said *Booth* and wife, and that *Mary Ann Millard* was the heir at law of the said *Mary Millard*, who were permitted to appear and become parties defendants in the cause. At March term 1827, the death of *Rose Ann Oehler*, one other of the complainants, was suggested, and that *Mary Ann Oehler* and *Elizabeth Ann Oehler*, were the heirs at law of the said *Rose Ann*, who were permitted to appear by their guardian, and become parties complainants, &c.

The cause being submitted to the court for decision, the Court [*Stephen*, Ch. J. and *Plater*, A. J.] at March term 1827, passed the following decree: Independently of the lapse of time which has taken place since the alleged purchase, and the circumstance of the death of the trustee some years before suit was brought, this court is not satisfied by the evidence in the cause, that *Walker* did purchase for the benefit of *James Carberry*, as stated by the complainants—the only testimony to that fact being the proof made by *Arthur Thompson* and wife, whose testimony is very much shaken by the circumstance of their paying rent to the trustee. If the bill had been filed against *Walker*, in his lifetime, he would have had the benefit of his answer, instead of which the parties wait until after his death, and after he had made considerable improvements, before they institute any proceeding to recover the property. It is also a circumstance of some weight, that the purchase mo-

ney was not advanced by *James Carberry*, in whom it is alleged a resulting trust vested, and under whom the complainants claim.—*Decreed*, that the bill be dismissed, but without costs. From this decree the complainants appealed to this Court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, ARCHER, and DORSEY, J.

*Ashton* and *Stonestreet*, for the Appellants, contended, 1. That *Bennet Walker* in 1792, became the purchaser of the tract of land called *Yielding Berry*, as trustee for the use and benefit of *James Carberry*.

2. That the lapse of time from 1795, when *Walker* obtained possession of the land, is not a sufficient bar to the claim of specific performance.

3. That the statute of frauds cannot operate to avoid the purchase in trust; because there was no declaration of the trust in writing, as the purchase was made with *Carberry's* money.

4. That if the trust for *James Carberry* was void because of the want of a declaration thereof in writing; yet the trust was a resulting trust for the benefit of *Patrick Carberry*, the father of the complainants, and therefore should be specifically performed to his heirs.

5. That the death of *Bennet Walker*, before the commencement of the suit, is no ground against a decree for specific performance, inasmuch as the delay in commencing suit is sufficiently accounted for by the poverty of the heirs of *Patrick Carberry*, and the death of each of the sons before or shortly after coming of age.

6. That the payment of rent to *Bennet Walker* by the mother of the complainants, has no tendency to impeach or shake the evidence of herself or *Arthur Thompson*.

7. That the improvements made by *Walker*, during his lifetime, with the knowledge of the complainants, does not invalidate the claim for specific performance, and at most, could only entitle the heirs to allowance for such improvements.

8. That the heirs of *Bennet Walker* should not only convey the said land to the complainants, but also account for the rents, issues and profits thereof, from the death of *Bennet Walker*.

9. That the unwarrantable use and occupation of the land by *Bennet Walker* from 1795 to 1809, should be applied to extinguish his claim for compensation for improvements.

10. That the heirs of *Bennet Walker*, should be charged with the improved value of the land, from the time of *Bennet Walker's* death, and with interest at the rate of 6 per cent. upon each year's rent of the land.

11. That the first decree put an end to the question as to the complainants' right to relief, which decree was final, unless upon a bill of review it was annulled or changed.

On the *third point*, they referred to 7 *Johns. Ch. Rep. (General Index,)* tit. *Trusts and Trustees,* 256.

*C. Dorsey,* for the Appellees, relied upon the length of time, possession, &c. and referred to 1 *Madd. Ch.* 79, 73. 1 *Fonbl.* 329. *Pickering v Lord Stamford,* 2 *Ves. jr.* 280. *Lord Shipbrooke v Lord Hinchbrook,* 13 *Ves.* 396. *Hovenden v Lord Annesley,* 2 *Sch. & Lef.* 636, 639.

EARLE, J. delivered the opinion of the Court. The testimony in this cause is entirely satisfactory to our minds, that the purchase made of the tract of land called *Yielding Berry* in 1792, by *Bennet Walker,* was for the benefit of the family of the then proprietors of the estate. The purchase money was raised by a sale of *Anne Carberry's* dower rights in the land called *Ireland,* and a gift made of it by her and her husband, *Patrick Carberry,* to their eldest son, *James Carberry.* As his, it was deposited in the summer of 1792, with *Bennet Walker,* who undertook the trust of purchasing in the land therewith for his use. It was purchased in by the trustee at the sheriff's sale, the November following; and the executed trust resulted for the use of *James Carberry,* who thereby became the *cestui que trust,* in fee. He died under age and without issue, and his rights devolved on his brothers and sister, the sons and daughter of *Patrick Carberry* and *Ann Carberry,* afterwards *Ann Thompson;* the oldest of whom, *Francis Nicholas Carberry,* attained the age of twenty-one, in April 1805, and died in the month of August following. With these views of the facts before us we should think it is clear, that

length of time forms no bar to the proceeding, and that the de-
cree of *St. Mary's* county court ought to be reversed.

This case depended in the court below, from 1815 till the
year 1827, during which period, death made many changes in
the parties on each side the docket. For this reason we have
determined to say nothing of the rents and profits of *Yielding
Berry*, or of the repairs and improvements made thereon, and
to decree only, that this tract shall be conveyed by the appel-
lees to the appellants in fee simple.

DECREE REVERSED, &c.